## PREFERRED ACC. INS. CO. OF NEW YORK v. BARKER.

(Circuit Court of Appeals, Fifth Circuit. February 28, 1899.)

### No. 739.

**1. ACCIDENT INSURANCE—CONSTRUCTION OF POLICY—SUFFICIENCY OF PROOF OF ACCIDENTAL DEATH.**

Under an accident policy requiring the claimant thereunder, in case of the death or disability of the insured, to furnish direct and positive proof that the death or disability resulted proximately and solely from accidental causes, the testimony of eyewitnesses to the death of the insured is not required, where there was no witness, but the furnishing of such circumstantial evidence as was afterwards sufficient to satisfy a jury that the death resulted from one of the causes insured against must be deemed to have been a sufficient compliance with the requirement.

**2. JUDGMENTS—PLEADING AS ADJUDICATION.**

Under the prescribed practice in Louisiana, a defense of res judicata must be specially pleaded to be available.

**3. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP—ADMISSIBLITY OF EVIDENCE.**

Testimony in reference to the citizenship of the parties is only admissible in support of allegations properly made in the pleadings.[1]

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This was an action brought in the United States circuit court for the Eastern district of Louisiana by Mrs. Harriet Barker, widow of J. W. Barker, against the Preferred Accident Insurance Company of New York, upon a policy of insurance of that company held by him in favor of his wife. Ver-

---

[1] As to allegations of citizenship, see note to Shipp v. Williams, 10 C. C. A. 249, and supplementary thereto, under same title, note to Mason v. Dullagham, 27 C. C. A. 298.

dict was for $3,000, the full amount of the policy. The case was brought here by said insurance company upon a writ of error. For former report, see 32 C. C. A. 124, 88 Fed. 814.

Mr. J. W. Barker held an accident policy for $3,000 with the Preferred Accident Insurance Company. It was what is known as a "restricted policy." It insured him solely against the effects of bodily injury caused solely by external, violent, and accidental means. A further clause provided that it did not extend to or cover any cause of disability or death whatever, except where the claimant shall furnish to the company direct and positive proof of such disability or death which resulted proximately and solely from accidental causes. Death by freezing was excepted. Clause 2 of conditions in the policy provides that, "unless direct and positive proof of death or injury and duration of disability shall be furnished to the company within the following limit of time: (1) As to fatal injuries, within two months from the date of death, * * * then all claims based thereon shall be forfeited." Other conditions named in the policy were numerous, but become unimportant under the assignment of errors in this case.

Testimony taken at the trial tended to show that Barker lost his life as follows: Quite early in the morning of the 26th of November, 1896, he went hunting near the Rigolets, and was last seen alive about 7 o'clock in the morning. About 5 o'clock that evening one J. G. Sanford found him dead, standing in mud and water up to between his knees and hips, leaning across his boat, and grasping in his hands bunches of grass that had been growing near the shore. The ducks he had shot, together with the decoys he had been using, his coat, and other property were arranged in the boat. The bow of his boat was resting upon shore. Sanford, who was a tall strong man, lifted him out with considerable difficulty, and placed him in the boat. It was shown that Barker had been in good health, and that he was an experienced hunter. The evidence also showed that the day was very cold; that it had been raining hard; that Barker was a small man, weighing about 120 pounds. There were no marks of violence on the body, and Dr. Fenner testified, from his examination, he came to the conclusion that Barker died from being exposed to the cold weather, etc., as the result of being bogged up, and was unable to extricate himself, and avoid the effects of the cold weather and water.

Hewes T. Gurley, for plaintiff in error.

Solomon Wolff, for defendant in error.

Before McCORMICK, Circuit Judge, and BOARMAN and SWAYNE, District Judges.

SWAYNE, District Judge (after stating the facts as above). At the close of the testimony defendant's counsel moved the court to instruct the jury peremptorily to find a verdict for the defendant on the grounds following:

"First, that the proofs of death were not furnished to the company in accordance with the requirements of the policy, and were not such proofs as were required; second, that the judgment of the court herein on the exceptions acts as res judicata to the effect that these proofs were not sufficient; third, on the ground that it has not been affirmatively or positively shown that the death of J. W. Barker was the result of an accident."

The only assignment of errors brought up in the record is the following:

"The lower court erred in refusing the motion made by defendant, at the close of the testimony, to direct a verdict for the defendant, and refusing such verdict, as fully shown by the reasons and statements contained in bill of exceptions No. 1; and erred in refusing to admit the testimony regarding the citizenship, as shown by the statements contained in bill of exceptions

No. 2,—which bills of exceptions Nos. 1 and 2 are, by reference, made a part of this assignment of errors, as if repeated and copied in full."

The first question raised by the assignment of errors, under bill of exceptions No. 1, is in reference to furnishing proofs of death to the company in accordance with the requirements of the policy. A careful inspection of the record shows that said proofs were sent and received by the company long before the time had expired in which they should be sent under the terms of the policy. Said proofs consisted of a sworn statement of John G. Sanford, detailing the circumstances under which he found the body of the deceased; the affidavits of the clergyman and the undertaker who officiated at the funeral that they identified the body as that of J. W. Barker; the formal questions and answers propounded to the beneficiary, Harriet Barker, also sworn to; the certificate of the board of health for the parish of Orleans, describing the deceased, stating cause of death to be exposure; and the certificate of Dr. Fenner, assistant coroner, and the certificate of coroner, as to death from exposure. It would be difficult to see how more thorough and satisfactory proofs of death could have been furnished than the above, under the circumstances.

We do not lose sight of the contention of the company, as expressed in its letters, at the trial, and brought up here as one of the principal grounds of defense, that the company must be furnished with direct and positive proof that death resulted proximately and solely from accidental causes. It is admitted that no one witnessed the death of the insured, but there are other evidences than the testimony of eyewitnesses that can properly be considered, and, if the jury find them satisfactory and convincing, they are direct and positive enough to sustain the verdict. The previous good health of the deceased, the condition of the body when found, the depth of mud and water in which he died, the difficulty of removing the body from the bog, the position and contents of the boat, and the character and temperature of the weather, were important facts, properly submitted to the jury, to enable them to determine the issues formed in the case. In this case, as in many others, where the body of the insured is found, and no one has witnessed the death, the circumstances and surroundings are the only evidence that can be produced to determine the cause of the death. Such facts must be submitted to the jury for their consideration, and their finding thereon is final. It would have been grave error for the trial judge to have complied with the request of the defendant below and directed a verdict for it.

The record does not disclose the fact that the ruling of the circuit court upon the exceptions to the first petition was res judicata. Said petition was afterwards amended, and there is no plea in the record specially setting up "res judicata" as a defense, according to the practice prescribed in the state of Louisiana. Therefore that defense cannot be urged here. The testimony in reference to the citizenship of the parties litigant was not admissible for the same reason. It was not pleaded, and, according to the practice here, evidence could not be admitted at the trial

on that subject. As this disposes of all the questions raised by the assignment of errors, we believe the judgment of the lower court should be affirmed.