BUSINESS MEN'S ACC. ASS'N OF AMERICA v. SCHIEFELBUSCH.*

(Circuit Court of Appeals, Eighth Circuit. December 2, 1919.)

No. 5423.

1. INSURANCE ⊙⟾455—DEATH FROM BLOOD POISONING CAUSED BY "ACCIDENTAL MEANS."

   The death of an insured from blood poisoning from an infected abrasion, caused by rubbing his head, which was bald, with an infected towel, *held* caused by "accidental means," within the terms of the policy, in the absence of evidence that he knew of the infected condition of the towel when he used it.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accidental Means.]

2. APPEAL AND ERROR ⊙⟾173(14)—NEW DEFENSE BY INSURER CANNOT BE RAISED FOR FIRST TIME ON APPEAL.

   In an action on an accident policy for death of insured from an infection, caused by his own voluntary act, that he knew the probable consequences of such act *held* matter of defense, and the question one for the jury, which cannot be raised for the first time in the appellate court.

3. INSURANCE ⊙⟾665(5)—EVIDENCE OF CAUSE OF DEATH AS ACCIDENTAL.

   Evidence *held* sufficient to sustain a finding that the cause of death of insured was accidental.

In Error to the District Court of the United States for the Western District of Oklahoma; Joseph W. Woodrough, Judge.

Action at law by Bertha Schiefelbusch against the Business Men's Accident Association of America. Judgment for plaintiff, and defendant brings error. Affirmed.

Solon T. Gilmore, of Kansas City, Mo. (C. G. Horner, of Guthrie, Okl., on the brief), for plaintiff in error.

A. G. C. Bierer, of Guthrie, Okl. (Frank Dale and N. E. McNeill, of Oklahoma City, Okl., on the brief), for defendant in error.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

CARLAND, Circuit Judge. This is an action by defendant in error, hereafter called plaintiff, to recover from plaintiff in error, hereafter called defendant, a death loss on an accident policy issued to her husband, Mathis Schiefelbusch. The plaintiff recovered a verdict below, and the defendant brings the case here, assigning error. The policy contained the following provisions:

"Hereby insure him against loss resulting from bodily injuries, effected directly, independently, and exclusively of all other causes, contributing or proximate, through external, violent, and accidental means." "* * * For loss of life, $5,000.00" "Blood poisoning resulting directly from bodily injuries shall be deemed to be included in the said term 'bodily injuries.'"

The plaintiff stated her cause of action as follows:

"That the said Mathis Schiefelbusch being a man that is termed and designated as bald-headed would frequently during the summer time and in hot weather in wiping and rubbing the perspiration from the top of his head would do so with a towel, and that upon the 17th or 18th day of July, 1916, the exact date being unknown to said plaintiff, the said Mathis Schiefelbusch

did violently and by external means in attempting to rub the perspiration from the crown of his head used a towel which had been used in his dental work, and by rubbing over his head did cause a slight abrasion of the skin and after receiving said injury and abrasion of the skin that thereafter and thereby an infection set in and that by reason of said infection and as a direct result from the violent rubbing of said head, which caused an abrasion of the skin, and as a direct result blood poisoning resulted and of said injury said Mathis Schiefelbusch died on or about the 24th day of July, 1916, which said death was caused and resulted directly from the external, violent and accidental injury received from the rubbing of the towel or cloth over the head of said Mathis Schiefelbusch thereby causing a slight abrasion of the skin."

It was admitted at the trial that the deceased died from blood poisoning. Counsel for defendant submit two propositions for reversal. They are as follows:

(a) "There can be no recovery under a policy insuring against the result of an injury effected through accidental means, where such injury, although totally unexpected, fortuitous, and undesigned, and in that sense accidental, is occasioned by voluntary act on the part of the insured, executed in an expected and ordinary way, since such injury, though accidental, is not the result of accidental means."

(b) "The theory that Dr. Schiefelbusch's death resulted from the causes named in the petition is based upon a chain of presumptions or inferences, and violative of the rule of law that, whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves be presumed."

[1, 2] The defendant introduced no testimony. The evidence on the part of the plaintiff shows the following facts: The deceased was a dentist, and practiced his profession at Yale, Okl. He was baldheaded, and perspired profusely on his head and neck during hot weather. He had a habit or practice of using, to the extent of a dozen times a day or more, the towels used by him in the practice of his profession, to wipe perspiration from the top of his head and neck. He used these towels for this purpose when they were dirty, and had blood and pus upon them, coming from the mouths of patients. He wiped his hands upon these towels after having his hands in the mouths of patients. The towels often had upon them hardened particles of plaster of paris. The practice of using these towels was so common that Dr. Bacon had talked to the deceased about it.

The history of the illness of deceased was substantially as follows: On Wednesday, July 21, 1916, deceased complained of pain at the back of his neck and the top of his head. There were circumscribed red spots upon the top of the head and upon the neck. They were inflamed and swollen. Deceased suffered with pain in the locality mentioned on Thursday and Friday. Saturday morning he had a chill, and went to bed exhausted. He continually grew worse, became delirious on Sunday afternoon, and died on Monday morning about 1:30 o'clock. Dr. Hudson incised the red spot on the top part of the head on Thursday. He found a small necrotic area underneath the skin, and no free pus. In the judgment of the doctor, deceased had been infected by bacterial or septic infection. There was medical testimony that not a day passed upon which deceased could not have been infected by the towels with the streptococcus germ; that the continual rubbing of the head under the circumstances shown would be sufficient to carry

a germ into the body of deceased; that there was no indication that the germ was carried into the body from any other source or manner than by the use of the towels; that it was very probable that deceased was infected by the rubbing of the towels, and that the infection originated in the localized places upon the head.

There was no allegation in the answer that, when deceased used the towels upon his head in the manner alleged in the complaint, he knew they were infected and were liable to infect him. The case below was not tried upon that theory. The trial court did not charge the jury upon that question, nor was it requested so to do by the defendant, and the jury did not pass upon that question. The plaintiff, in her effort to show that the towels were the cause of the infection and consequent blood poisoning of the deceased, came near showing that deceased must have known of the infected condition of the towels and that they were liable to infect him; but, as we have said, that question was not before the court. The question in all events was one for the jury to determine under the evidence, and a verdict could not have been directed on the ground that deceased did know of the infected condition of the towels, and that they were liable to cause an abrasion of the skin and infect him. If the deceased knew that the towels he used in the manner indicated would cause an abrasion of the skin, and also were infected with the streptococcus germ, then the means of death was not accidental, within the language of the policy. Interstate Business Men's Acc. Ass'n v. Lewis, 257 Fed. 241, —— C. C. A. ——.

There is no finding, however, that deceased had the knowledge mentioned, and the evidence upon the subject could not be considered by the trial or this court, except for the purpose of deciding whether there was enough to go to the jury. The fact that deceased had this knowledge was matter of defense. Plaintiff was not required to defeat her own cause of action. If the deceased used the towels without knowledge that they were infected, and were liable to cause an abrasion of the skin and also infect him, then plaintiff showed that death was caused by accidental means, as he could not be said to have intended the use of a towel that would infect him. We cannot say that deceased had the knowledge mentioned for two reasons: (a) The case below was not tried on this theory; (b) the evidence upon the subject is such that the question would have to be submitted to a jury. We are therefore of the opinion that the death of deceased was caused by accidental means.

[3] As to the claim that the verdict of the jury is based upon a chain of presumptions or inferences, we are satisfied that, even if this be so, it does not invalidate the verdict, if there were facts from which the jury had the right to draw legitimate inferences. The deceased was a man in good health. He did rub his head with towels which were liable to cause an abrasion of the skin and the introduction of streptococcus germs into his body. There was nothing to indicate that the germ which caused blood poisoning came from any other source. There was medical testimony to the effect that it was probable that the

infection came from the source stated. Dr. Hudson, when testifying, said:

"Well, owing to his habits of rubbing the towel over his head in that way, rubbing off the tender cells of the skin which lay in layers on the outside of the skin, I would say it was very probable he got an infection through the skin in that way."

The testimony of Dr. Hudson was supported by physical facts testified to by the plaintiff and corroborated by three other reputable physicians. We think there was sufficient evidence to sustain the verdict of the jury. Such evidence has been held sufficient in many other cases. Preferred Acc. Ins. Co. of New York v. Barker, 93 Fed. 158, 35 C. C. A. 250; McCarthy v. Travelers' Ins. Co., 15 Fed. Cas. 1254; 1 Cyc. p. 292; M., K. & T. Ry. Co. v. Minor (Okl.) 181 Pac. 142; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453.

There was some attempt on cross-examination to show that the blood poisoning may have been the result of a mosquito bite. There was no evidence, however, that any mosquito ever bit the deceased. There was testimony, also, that refuted any claim that deceased was infected by the incision made by the physicians. The jury were called upon to decide the question presented by the evidence, and they have decided it upon sufficient testimony, and their verdict is final.

Judgment below affirmed.