EDNA C. RAMSEY *v.* FIDELITY & CASUALTY COMPANY.*

(*Nashville.* December Term, 1919.)

INSURANCE. Death from blood poisoning caused by infection from pulled tooth not "accidental."

Death through injury to gum, caused by pulling of a tooth which made port of entry for bacteria into the circulatory system and directly resulted in blood poisoning, was not within a policy insuring against "bodily injury through accidental means exclusive of all other causes" and the beneficiary's complaint, alleging such acts, was demurrable.

Cases cited and distinguished: Stone v. Fidelity & Casualty Co., 133 Tenn., 673. Lehman v. Great Western Acci. Ass'n, 155 Iowa, 737; Rock v. Insurance Co., 172 Cal., 462; Salinger v. Fidelity & Casualty Co., 178 Ky., 369; Smith v. Travelers' Ins. Co., 219 Mass., 147; Maryland Casualty Co. v. Spitz, 246 Fed., 817; Herdic v. Maryland Casualty Co., 149 Fed., 198.

FROM SHELBY.

---

*As to when death or injury may be deemed to have been caused by accidental means though the voluntary act of insured was the primary cause thereof, see note in 5 L. R. A. (N. S.), 657.

The question of liability on accident policy for sickness or death caused by blood poisoning, is discussed in notes in 5 L. R. A. (N. S.), 926; L. R. A., 1917A, 1056.

On death or injury from blood poisoning resulting from insured's voluntary act as caused by accident or accidental means, see note in 7 A. L. R., 1133.

Error to the Chancery Court of Shelby County.—HON·
I. H. PERES, Chancellor.

FITZHUGH, MURRAH & FITZHUGH and ALFRED SOHM, for
plaintiff in error.

EWING, KING & KING, for defendants in error.

MR. JUSTICE HALL delivered the opinion of the Court.

The bill in this cause was filed by the complainant in
the chancery court of Shelby county, to recover of the de-
fendant the sum of $7,500, together with interest and
penalties, alleged to be due the complainant as benefi-
ciary under an accident insurance policy issued by the
defendant to her husband, Jeff B. Ramsey, who died on
February 6, 1918, while the policy was in force and ef-
fect.

The allegations of the bill, setting forth the grounds on
which the liability of the defendant is predicated, are as
follows:

"Complainant avers that after the issuance of said pol-
icy the same was renewed by the payment of renewal
premiums, and that while the said policy was in full force
and effect, on to-wit, the 6th day of February, 1918, the
said Jeff B. Ramsey died in the city of Memphis, Shelby
county, Tenn., from blood poisoning which resulted direct-
ly and independently of all other causes from bodily in-
jury through accidental means within the meaning of the
provisions of said policy of insurance; that the bodily
injury consisted of the laceration of tissue and breaking
down of a portion of the walls surrounding a tooth of the
said Jeff B. Ramsey, which was extracted on or about
January 26 or 31, 1918, and as a result of the said bodily

injury a port of entry for bacteria into the circulatory system was accidentally created, and that through said bodily injury thus sustained bacteria did enter into the blood circulation of the said Jeff B. Ramsey, producing blood poisoning, from which he died, on, to-wit, February 6, 1918; that his said death resulted directly, independently, and exclusively from all other causes from such bodily injuries so sustained through accidental means under the terms of said policy, to-wit, the injury to the tissue or wall caused by the pulling of a tooth, which bodily injury made a port of entry for bacteria or germs into the circulatory system, which directly and proximately resulted in blood poisoning."

The policy contained the following clauses:

"The Insuring Clause.

"The Fidelity & Casualty Company of New York (herein called the company) does hereby insure the person (herein call the assured) named in statement A of the Schedule of Warranties against bodily injury sustained during the term of one year from noon, standard time, of the day that this policy is dated, through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane), and resulting directly, independently and exclusively of all other causes, in—"

"Blood Poisoning.

"Article 7. Blood poisoning resulting directly from a bodily injury shall be deemed to be included in the said term, bodily injury."

The defendant demurred to the bill on the following grounds:

"(1) There is no equity on the face of the bill.

"(2)  The bill affirmatively shows that the death of the deceased was not caused by accidental means within the terms of the policy sued on.  It shows that the deceased intentionally extracted, or had extracted, a tooth which caused a laceration of the gum, and an infection subsequently set up.  It shows that the injury to the gums was the result of an intended act, and in no sense was caused by accidental means.

"Wherefore the defendant prays the judgment of the court whether it shall be required to answer further."

The chancellor sustained the demurrer and dismissed the bill, being of the opinion that it did not state a cause of action, it not being alleged that the bodily injury stated and described therein was caused by accidental means. The complainant, however, was allowed sixty days by the chancellor within which to amend her bill so as to meet the objection of the demurrer, and, unless such amendment was made within said time, the order provided that the bill would stand dismissed.

The complainant did not amend her bill, and it therefore stood dismissed at the expiration of the sixty days.

The record was filed for writ of error, and the cause is now before this court.  There was a motion made by the defendant in this court to have the writ of error dismissed, but we understand from statements of counsel for defendant, made at the bar of the court upon the argument of the cause, that this motion is no longer relied on; at any rate, we are of the opinion that the motion is

not well taken, and the same is overruled, and need not be further noticed.

By her assignments of error complainant insists that the chancellor erred in holding that the bill did not state a cause of action, because it did not allege that the bodily injury, which resulted in blood poisoning, was sustained through accidental means.

We are of the opinion that there is no error in the holding of the chancellor. The bill does not allege that the means causing the injury were accidental. The bill does not allege that the tooth was pulled by accident, nor does it allege that any accident happened while the tooth was being pulled. The means by which the gum was injured were intentionally and purposely applied. The insured knew that the inevitable result of pulling the tooth would be to break down and lacerate the gum tissue. It was the result that followed the pulling of the tooth and the laceration of the gum tissue that was unlooked for, unexpected, and unforeseen. There can be no inference from the allegations of the bill that there was any accident in connection with the pulling of the tooth. The injury, which resulted to the gum from the pulling of the tooth, was the ordinary and natural result of such an operation

It was held by this court in *Stone* v. *Fidelity & Casualty Co.*, 133 Tenn., 673, 182 S. W., 252, L. R. A., 1916D, 536, Ann. Cas., 1917A, 86, that the general rule is that an injury is not produced by accidental means within the meaning of an accident policy, where the injury is the natural result of an act, or arts, in which the insured intentionally

engages.  In that case this court, speaking through Special Justice FANCHER, said:

"A person may do certain acts the result of which produces unforseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract.  The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended.

"Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result.  It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental."

In that case Stone (the insured) had attended a football game on a cool day when the ground was damp and contracted a cold resulting in lumbago, and, after medical treatment and the debility resulting from a purgative which he had taken, and while lying in bed, had a paper brought, reached for it, and raised it suddenly above his head, when his strong blood pressure caused a rupture of the retina, destroying the sight of one eye.  In that case the court further said:

"The movement of the hand suddenly to get the paper was executed exactly as intended.  It was a simple and ordinary movement.  The rushing of the blood with excessive pressure, rupturing the retina, was therefore caused by natural means.  While the result was not foreseen, the causes producing that result were not accidental.  It is well in line with the cases above cited sustaining the

majority rule, which we adopt.  This rule affords a reasonable interpretation of the contract.''

Mr. Joyce, in his recent Work on Insurance, states the rule thus:

"In this connection it may be noted that the language of the policy may, it is held, warrant a distinction between accidental death and accidental means.  Thus in case of an insurance against death from bodily injury caused by violent, accidental, external, and visible means, the court said: 'A person may do certain acts the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use.  The means were not accidental, but the result might be accidental.'  This distinction is more clearly apparent where the policy uses words intended to qualify or extend the rule as to proximate and remote cause, as where the provision is 'shall die from the effects of such injury.'  Here the death need not be immediately caused by the injury, yet if the injury was immediately caused by the accident, and the death ensued as a natural consequence or effect of the injury, then the assurer is liable.  So in an Iowa case a distinction is also made between an accidental cause and an accidental result between an agreement to pay the policy amount in case assured should meet with an accidental death, and in undertaking to pay said amount in case assured's death is produced by accidental means.  In other words, the result may not have been intended nor anticipated, and

may have been such that it could not have been foreseen. The voluntary and intentional act of the person suffering the unanticipated result may have been the immediate cause of the result. Nothing may have been done or have occurred which assured had not foreseen and planned, except the injury and the consequence resulting therefrom, and, again, the result which follows assured's act may not have been the usual result thereof, but may have been unusual and unexpected and still not be accidental, as where the act which produced such unexpected result was voluntary. The above applies where the policy provides for recovery in the event of death, but only where death results from bodily injuries effected solely by external, violent, and accidental means. The means which cause the injury only, and not the injury itself, are referred to by the clause of an accident policy providing that the insurer's liability shall attach only when the injury is through 'external, violent and accidental means.' "

In Corpus Juris, vol. 1, p. 430, it is said:

"Blood poisoning resulting from an accidental wound or abrasion is within the protection of an accident policy, but it is otherwise where the wound or abrasion is not an accidental injury within the meaning of the policy."

In *Lehman* v. *Great Western Acci. Ass'n,* 155 Iowa, 737, 133 N. W., 752; 42 L. R. A. (N. S.), 562, the court said:

"A conflict exists among the decisions as to what injuries are the result of accidental means within the contemplation of accident policies. It seems possible, how-

143 Tenn.—4

ever, to reconcile some of the cases upon the theory that injuries resulting from acts which were exactly what the insured intended, and which were unaccompanied by an unintentional or involuntary muscular effort, are not within the meaning of the provisions under consideration, while injuries are within these provisions where the insured's act bringing about the injury is accompanied by an unanticipated and unintentional movement or circumstance. A distinction is also drawn in some cases between 'accident' and 'accidental means'; the ground being that, while the result of an intentional act may be an 'accident,' the act itself, where intended, cannot constitute 'accidental means.' "

In *Rock* v. *Insurance Co.*, 172 Cal., 462, 156 Pac., 1029, L. R. A., 1916E, 1196, the court said:

"A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. Policies like the one before us have been before the courts in many cases, and the great weight of authority, we think, sustains the view which we have just expressed. Thus, in *Clidero* v. *Scottish Acci. Ins. Co.*, 29 Scot. L. R., 303, Lord ADAM said: 'The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The

question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are, to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.' "

In *Salinger* v. *Fidelity & Casualty Co.*, 178 Ky., 369, 198 S. W., 1163, L. R. A., 1918C, 101, the court said:

"So, the question for decision is reduced to this proposition: Does an intentional exertion constitute 'accidental means' of injury within the provision of the policy? It may be treated as established by the great weight of authority that an injury is not produced by accidental means within the terms of an accident insurance policy, where it is the direct, though unexpected, result of an ordinary act in which the insured intentionally engages. The rule is stated as follows in 1 Cor. Jur., page 426: 'If a result is such as follows from ordinary means, employed voluntarily and in a not unusual or unexpected way, it cannot be called a result effected by accidental means.' "

In *Smith* v. *Travelers' Ins. Co.*, 219 Mass., 147, 106 N. E., 607, L. R. A., 1915B, 872, the court said:

"But there was nothing accidental in the inhalation of this douche. The deceased did exactly what he intended

to do. This particular act of inhalation, though harder or more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designated it to be, though it produced more internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental. But it is only for a death resulting from injury effected through such means that the defendant is made responsible by the policy. It is not sufficient that the death or the illness that caused the death may have been an accidental result of the external cause, but that cause itself must have been, not only external and violent, but also accidental."

In *Maryland Casualty Co.* v. *Spitz,* 246 Fed., 817, 159 C. C. A., 119, L. R. A., 1918C, 1191. The facts were as follows:

"Where a person, insured against death through accidental means, having a boil on his neck, rubbed it while his hands were soiled with blood and other substances, for the purpose of relieving an itchiness, thereby breaking the scab and permitting germs of erysipelas to enter, his death from erysipelas did not result from accidental means, as the breaking of the scab was a probable result, and one reasonably to be expected from his intentional act."

The court said: "The court submitted this question to the jury, asking them to find whether the injury was in-

flicted accidentally, and in this submission we think there was error. As we read the testimony, nothing appears to show that the injury was inflicted by accidental means. The deceased rubbed or scratched his neck in the ordinary way; there is no evidence that he was disturbed or interfered with during the operation, and an ordinary and not unusual result followed; that is, he broke the scab. His hands were not clean; but he knew that fact, and must be held to the risk of such harm as might follow therefrom. In a word, he seems to have done just what he intended to do, namely, rub or scratch his neck to relieve the itching, and in our opinion breaking the scab during the process was a probable result, one reasonably to be expected. We think the defendant was entitled to binding instructions. The judgment is reversed."

In *Herdic* v. *Maryland Casualty Co.*, 149 Fed., 198, 79 C. C. A., 156, it is said:

"The circuit court sustained the demurrer of the defendant in that court (and here) to the statement of claim of the plaintiff below, wherein she alleged that the defendant, on the application of Carl Herdic (her husband), had issued a policy of insurance, made part of her statement, by which, as she averred, the defendant 'did insure Carl Herdic in the sum of $5,000 against death resulting from septicaemia;' and the question was, and is, whether the policy sued on did insure against death resulting from septicaemia not caused by 'accidental means,' but ensuing upon a surgical operation for appendicitis.

"The policy is an accident policy, and Carl Herdic could not have conceived it to be anything else. The company he applied to was a 'casualty company.' His application was for an 'accident policy,' and the policy itself was so designated, both on its face and by indorsement. Presumably such a policy would be intended, and understood, to insure against bodily injuries through accidental means, not against death from disease; and accordingly we find at the outset of this one, and in what may be called its cardinal clause, the statement that the company issuing it did thereby insure against 'bodily injuries . . . sustained . . . though external, violent and accidental means.' "

These two last cases are directly in point, as the facts in those cases are very similar to the facts in the instant case.

We think, according to the great weight of authority, the rule is that the means must be accidental. It is not sufficient that the illness or death that followed the means was accidental. In the instant case the injury to the gum, from which blood poison resulted, was the natural result of pulling the tooth, and one which the insured knew would be inevitable.

There is no error in the decree of the chancellor, and it is affirmed, with costs.