## METROPOLITAN LIFE INSURANCE CO. v. MRS. TOMMIE L. JOHNSON.

Affirmed by Supreme Court, February 12, 1927.

1. **Insurance. Accident.** Person shot by another without provocation held to have met death accidently, as contemplated under the double indemnity clause of the policy.

Where the evidence showed that the deceased was probably drunk and that he wandered upon the premises of a man who shot him without provocation, held that the acts of the deceased were not such as one would reasonably anticipate would cause another to shoot him and therefore, his death was caused by accidental means.

Appeal in Error from Circuit Court, Shelby County; Hon. Ben L. Capell, Judge.

Affirmed.

J. P. M. Hamner, of Memphis, for appellant.

Wils Davis, of Memphis, for appellee.

HEISKELL, J. This is a suit to recover on a policy of insurance $1000 under general provision and $1000 additional under the

double indemnity clause and 25% penalty. The defendant interposed two pleas, that it is not indebted and that it did not contract with plaintiff as in the declaration alleged.

On the trial at the close of plaintiff's proof, which was all the proof, motions for a directed verdict were made on behalf of both plaintiff and defendant and the jury being waived by both parties, argument was heard and the case taken under advisement by the court. Thereafter the court found for the plaintiff in the sum of $2000 but declined to allow the statutory penalty of twenty-five per cent. Motion for new trial being overruled the defendant has appealed to this court.

The facts of the case are for the most part set out in a stipulation of counsel which is as follows:

It is agreed and stipulated by and between Wils Davis. attorney for the plaintiff, and Joe Hamner, attorney for the defendant, that this cause be submitted to the court and jury on the following agreed statement of fact together with any other testimony either party may see fit to offer:

1. It is agreed that on the morning of November 1, 1923, about 3:00 a. m. Osburn W. Johnson was shot and killed by Samuel R. Loving at 1649 Vance Avenue, Memphis, Shelby county, Tennessee.

2. It is agreed that on the 23rd day of February, 1923, the defendant, Metropolitan Life Insurance Company, issued its policy #3570018 on the life of Osburn W. Johnson for one thousand dollars. The plaintiff, Mrs. Tommie L. Johnson, his mother, being the beneficiary under said policy. That said policy carried what is commonly known as the "double indemnity clause," and for the purpose of this action the policy is hereto attached and marked Exhibit "A" and made a part of this agreement.

3. It is further agreed that the aforesaid policy was in full force and effect at the time of the killing of the aforesaid Osburn W. Johnson.

4. It is further agreed that the plaintiff, Mrs. Tommie L. Johnson, is entitled to receive the principal sum set out in the policy of one thousand dollars, and that the only amount contested herein is the amount that may be due her by reason of the double indemnity clause in the aforesaid policy. It is further agreed that the aforesaid defendant, Metropolitan Life Insurance Company, is willing and at all times has been willing to pay the aforesaid sum of one thousand dollars, the principal covered by the aforesaid policy.

5. It is further agreed by and between the parties hereto that if Samuel R. Loving were present he would testify in this case to

the following statements of fact surrounding the killing of Osburn W. Johnson on the morning of November 1, 1923, at the residence of said Samuel R. Loving at 1649 Vance Avenue, in a bungalow house which was set back off the street a distance of approximately twenty feet from the sidewalk, that said house is located on the south side of the street facing north, that the driveway which entered the premises leaves the street, crosses the sidewalk and runs along the west side of the house until it reaches a point immediately south of the house where it curves to the east in order to enter the garage; that Samuel R. Loving occupied the southwest room in said house on the ground floor and that there was a window in the south side of said room approximately four feet east of the driveway and that the killing hereinafter detailed took place through said window.

(It is agreed by counsel hereto that the original exhibits may by the Clerk be put in the record without copying same.).

That at about 3:00 a. m. on the morning aforesaid Samuel R. Loving heard a noise in his back yard and getting up and peering through the window of his room he saw a man in the yard between the back of his house and his garage, he thereupon called to him and the man made some response that was not understood by said Loving. The man in the back yard started toward said window and the said Samuel R. Loving fired three shots through said window in the direction of said man. He then called the Police Department, stating that there was a man in his yard and asking that officers be sent. Approximately fifteen minutes later he heard a noise at his window to his bed room. Again peering through the window he saw the face of a man at the window and he thereupon shot one time through the window killing Osburn W. Johnson.

Said shot penetrated the body of Osburn W. Johnson in the region of the heart and from the front of the body of Osburn W. Johnson. That the aforesaid Samuel R. Loving thereupon called the Police Station stating that he had shot a man. In the meantime the officers who had been sent to answer the first call arrived at Loving's home and found Osburn W. Johnson dead from the effects of the aforesaid bullet wound fired by Samuel R. Loving, laying on the ground in the yard near the window of Samuel R. Loving.

Shortly thereafter Detective Sergeant Frank Glisson arrived to make an investigation and took into custody Samuel R. Loving, and the aforesaid Samuel R. Loving made a statement of the circumstances substantially as set out above to Detective Sergeant Glisson. Samuel R. Loving was thereupon released upon his own recognizance and the next day made a detailed statement substantially as set out above to the Members of the Homicide Squad of the Memphis Police Department.

Samuel R. Loving is not now a resident of the State of Tennessee, but is without the jurisdiction of the court, and it is for this reason that the facts and circumstances as set out above are stipulated by and between counsel of record hereto.

The above stipulation with reference to what Samuel R. Loving would testify, were he a witness in court, it is agreed by and between counsel hereto may be read on behalf of the plaintiff herein as the deposition of the aforesaid Samuel R. Loving and cross-examination by and on behalf of the defendant herein is hereby expressly waived.

The additional facts shown by the record so far as material are these:

Osburn W. Johnson was a young man of the age of 21 years, and on the night of Oct. 31st he left his home in the northern section of Memphis about 7:30 o'clock with Don Breen and went to a dance hall in North Memphis, and there had something to drink. He came to town in his car, picked up some girls, had something else to drink, and went to Lanier's Dreamland where he was put out for being drunk by the dance hall bouncer. His companions left him sitting in his car in front of the dance hall and did not see him afterward until he had been killed. The home of Loving is about seven blocks from the dance hall in a strictly residential section with no public places around it in either direction for a distance of three or four blocks.

The first assignment of error is that there is no evidence to support the judgment of the court.

It is not necessary to set out the second and third assignments because the brief for defendant states the question raised as follows:

"There is only one proposition really upon which this case will turn, and that is, whether or not under the circumstances the death or killing of Osburn Johnson comes within the condition in the policy, to-wit: that it "result from bodily injury due to external, violent and accidental means.'"

The shooting by Loving was the cause of the death of the insured. Therefore death resulted from bodily injury effected solely through external violent means. The only question is whether death resulted from accidental means. The fact that the shooting was intentional on the part of Loving does not prevent the means being accidental. This is well settled by the case of Insurance Company v. Bennett, 90 Tenn., 263. "An injury not anticipated and not naturally to be expected by the insured, though intentionally inflicted by another, is an accidental injury within the meaning of the contract."

The only question remaining to be considered is whether or not Johnson anticipated the shooting, or whether the shooting was naturally to be expected by him. Rather we should say, the court having found in the negative as to these questions, is there any evidence to support the finding.

The present case is easily distinguished from the two cases most relied on by the defendant insurance company. Stone v. Fidelity & Casualty Company, 133 Tenn., 672; Ramsey Fidelity & Casualty Company, 143 Tenn., 42.

In each of these cases the act which was the cause of the injury was intentional and voluntary on the part of the insured. In the one case he intended to reach for the newspaper in the other he intended to have the tooth pulled.

If a man voluntarily takes ether and it causes his death, his death cannot be said to be caused by accidental means. It was the means he intended should be used. So in the case of having a tooth pulled. Here the means of Johnson's death was the shot fired by Loving. It could not be said that Johnson intended this shot to be fired. The case is not therefore at all like the case of Ramsey v. Fidelity Company, 143 Tenn., 42. But it is said a reasonably prudent man must have known that the shooting would take place as the natural result of his conduct. Is this true? How many cases of trespass result in death? How many men in Loving's place would have shot to kill a harmless man? The question of Loving's intention is not controlling. It is the question of Johnson's intention or expectation. Suppose Johnson had been attacked by a vicious dog and death had resulted. The intention of the dog would not affect the case. Could it be said in that case that he must have expected the attack? Could it be said in either, that he intended to invite the shot or the attack?

In determining whether or not the judgment of the court can be sustained the strongest view of the testimony must be taken to support the action of the trial court. The court may have taken the view, that in a dazed condition, Johnson wandered on to Loving's driveway thinking he was on a sidewalk or else that he was on the premises of some one who knew him. He knew that he intended no harm and might very well have thought Loving would understand. Loving admits that Johnson said something. That he spoke at all indicates harmlessness. The court might very well have concluded that Johnson had no idea of danger and no conception that being shot was the natural result of his conduct and this irrespective of whether he was drunk or sober. The shooting ceased when he spoke to Loving and this might have led Johnson to suppose that Loving understood and was satisfied.

Was the conduct of Loving naturally to be expected under the circumstances. He had fired several shots. The only natural thing for a sane, sober prowler, bent on mischief, to do was to run and disappear as quickly as possible. But he did not try to get away, on the contrary he spoke to Loving. We do not consider what he said, for this was objected to, but there is no dispute as to the fact that he spoke. If Loving had acted as a reasonable man would be presumed to act he would have concluded that Johnson was drunk or crazy and therefore it was unnecessary to kill him. It was not a solitary place in which Loving was alone and beyond reach of assistance, but a thickly settled locality with neighbors close at hand and aroused by the first shooting. Loving had called the police after the first shots and the police were on the way to his house. He may not have known this, but had reason to suppose his call would be answered. Did Loving do the thing naturally to be expected of an ordinary reasonable man under the circumstances. We think he did not and this view could well have been taken by the trial judge and would support the judgment.

Accidental means taking place not according to the usual course of events, unexpected, unforeseen. The shooting was the means of his death, and therefore his death was caused by accidental means.

All the assignments of error are overruled and the judgment of the lower court is affirmed.

Owen and Senter, JJ., concur.