### HERDIC v. MARYLAND CASUALTY CO.

(Circuit Court, M. D. Pennsylvania. July 6, 1906.)

#### No. 21.

INSURANCE—CONSTRUCTION OF ACCIDENT POLICY—DEATH FROM SEPTICÆMIA.

An accident policy, insuring generally against injuries sustained through external, violent, and accidental means. as therein limited, contained the following further clause: "This policy does not cover death or disability resulting from mineral, vegetable, gaseous, or any other kind of poisoning, except as hereinafter stated; but, subject to its conditions, it covers death or disability resulting from septicæmia, freezing, sunstroke, drowning, hydrophobia, choking in swallowing, and death only, as the result of an anæsthetic while actually undergoing a surgical operation at the hands of a duly qualified regular physician." *Held*, that such clause must be construed in harmony with the general character of the policy, which was one against accidents; that, as so construed, its purpose and effect were to except from the risk death or disability from accidental poisoning in general, and to cover death or disability resulting from septicæmia, freezing, etc., but only when resulting from an accident "subject to its conditions," and that the death of the insured from septicæmia resulting from an operation for appendicitis was not within its terms.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1175.

[Ed. Note.—Risks and causes of loss under accident insurance policies, see note to National Acc. Soc. v. Dolph, 38 C. C. A. 3.]

At Law.   On demurrer to plaintiff's statement.

John E. Cupp and Clarence E. Sprout, for demurrer.
Seth T. McCormick, for plaintiff.

ARCHBALD, District Judge. This suit is upon an accident policy. The person whose life was insured died of septicæmia, after an operation for appendicitis. This apparently takes the case out of the policy, there being no pretense that death was the result of an accident. It is contended, however, by the plaintiff that, accident or no accident, death by septicæmia is expressly provided for in the policy.

The issue between the parties is thus purely a legal one, and if the defendants are right the case may as well be brought to an end here and now, as sought by the demurrer.

By the policy in suit, the defendant company, in consideration of a premium of $25, undertook to insure Carl Herdic, the plaintiff's husband, "in the amount of $5,000 principal sum, and $25 weekly indemnity, against bodily injuries, not self-inflicted, sustained by the assured while sane, in the exercise of ordinary care, not under the influence of nor affected by intoxicants or narcotics, and through external, violent, and accidental means, * * * independent of all other causes." The death of the assured admittedly did not so result, and, if it is essential to a recovery that it should, the plaintiff has no case, and the demurrer must be sustained.

But the primary undertaking of the company, as so expressed, is made subject to certain further terms and conditions, among which is the following:

"(4) This policy does not cover death or disability resulting from mineral, vegetable, gaseous, or any other kind of poisoning, except as hereinafter stated; but, subject to its conditions, covers death or disability resulting from septicæmia, freezing, sunstroke, drowning, hydrophobia, choking in swallowing, and death only, as the result of an anæsthetic, while actually undergoing a surgical operation at the hands of a duly qualified regular physician."

The question is as to the purposes and effect of this clause. According to the defendants, it is declaratory merely, not enlarging the grounds of liability as contended by the plaintiff, but, on the contrary, restricting and limiting them. According to the plaintiff, however, it is a new and independent provision, by which, regardless of what has gone before, death from any of the causes enumerated, however it may happen to be brought about, is expressly insured against.

Whatever may be said of the last part of the clause, there is no difficulty with the first of it. By it death as the result of any kind of poisoning is taken out of the policy, it being distinctly declared that, except as therein stated, the company will not be liable therefor. This must, of course, refer to accidental poisoning, nothing but death by accident having so far been spoken of; the evident purpose being to relieve the policy from what has proved to be a prolific source of litigation (1 Cyc. 264), poisoning, however caused or induced, being thus put unmistakably beyond its pale. Immediately following this is the provision which is the subject of controversy. By it the policy in terms is made to cover death or disability resulting from septicæmia, freezing, sunstroke, and the rest. So far as septicæmia is concerned, the connection is obvious. This, as is well known, is brought about by the absorption into the blood of putrescent or poisonous matter, and, under the designation of "blood-poisoning," might possibly be regarded as excluded, although it has been held to the contrary. Omberg v. United States Mutual Accident Ass'n, 101 Ky. 303, 40 S. W. 909, 72 Am. St. Rep. 413. But when proceeding from external and violent sources, septicæmia is a well-recognized ground of liability in accident insurance. West Commercial Travelers' Ass'n v. Smith, 85 Fed. 405, 29 C. C. A. 223, 40 L. R. A. 653; Nax v. Travelers' Ins.

Co. (C. C.) 130 Fed. 985; Delaney v. Modern Accident Club, 121 Iowa, 528, 97 N. W. 91, 63 L. R. A. 603; Martin v. Equitable Accident Ass'n, 61 Hun, 467, 16 N. Y. Supp. 279. Acceding to this, and in order to remove all question, by the provision under discussion septicæmia is declared to be covered by the policy, relieving it from the possible effect of that which had gone before. A like declaration, in part for the same purpose, is added with respect to the other causes of death mentioned. There is no intent manifested in this with regard to either of them to depart from the general scheme of the policy, and, on the contrary, the whole is expressly made subject to its conditions, whereby the company is only liable where death is the result of external, violent, and accidental means.

It is said, however, that without this clause the company would be liable for death from septicæmia as the result of an accident, and that, unless it was intended to cover death from septicæmia however caused, it has no force. But this is met by what has been already said. It loses sight of the preceding provision with regard to poisoning. No doubt without that septicæmia or blood-poisoning the result of accident would be a ground of liability under the policy; but with it, it would not, or at least would be doubtful. Being taken out of the policy under the general designation of poisoning, it was necessary to restore it by express mention, as was done, if liability on account of it was to stand.

But it is further urged that, among the enumerated causes of death which the policy is declared to cover are sunstroke, hydrophobia, and the administration of an anæsthetic; and, as neither of these, under any circumstances, according to the argument of counsel, can be ascribed to accident, death generally must have been intended to be provided against, and not simply death from accidental means. No doubt the causes of death spoken of go together, and the construction to be adopted must be good as to all or none. But, so far as regards the possibility of accidental death from septicæmia, freezing, drowning, and choking in swallowing, there can be no dispute. Neither, as it seems to me, notwithstanding the contention of counsel, can there be, with regard to an anæsthetic, as to which common experience shows that there may be an unintentional and adventitious overadministration of it, within the meaning of the policy, even at the hands of a careful and experienced physician or surgeon of the strictest school. This leaves only hydrophobia and sunstroke to be accounted for, which it must be confessed are diseases pure and simple, and as to which the point may therefore seem to be well made. But the popular idea is not so, and sunstroke, at least, has been the subject of considerable litigation, as the decided cases show. Sinclair v. Passengers Ins. Co., 3 Ellis & Ellis 478; Dozier v. Fidelity & Causualty Co., 46 Fed. 446, 13 L. R. A. 114; Railway Officers' Accident Association v. Johnson, 109 Ky. 265, 58 S. W. 694, 52 L. R. A. 401, 95 Am. St. Rep. 370. As a concession to this view, and in order to remove all controversy (the same as in the case of septicæmia) sunstroke and hydrophobia are put in with the rest; the company declaring that, as to them, just as the others, the policy holds good. This is the natural and logical construction to be given to this provision of the policy,

and the one therefore which must prevail. By it all parts are harmonized and reduced to a consistent whole, where otherwise there is incongruity, if not conflict. The argument which seeks to make the clause speak differently, deriving out of it new and independent grounds of liability, loses sight of the fact, already alluded to, that it is expressly made subject to the general conditions of the policy, of the application and effect of which there can be no doubt. It will hardly be contended, for instance, that the provision with regard to intoxicants and narcotics does not obtain, so that death by freezing, the result of drinking, could be made the basis of a claim; or that in case of drowning the question whether it was suicide or not could be disregarded. But by the same logic which was invoked above, if these conditions are operative, why not the others also? And, if so, all must be fulfilled as much as one.

It is no answer to say that, if the policy is ambiguous, it is to be construed most strongly against the company and in favor of the insured. Rightly considered, there is no ambiguity, and no occasion therefor to resort to the rule. Undoubtedly the plaintiff is entitled to a liberal construction of it, but with the utmost liberality the construction contended for cannot be maintained.

Neither can it be said that this is a special provision, and so controlling, with respect to which other and more general provisions must give way. The policy is to be construed as a whole, and effect given to every part of it consistent with the general scheme. Hubbard v. Travelers' Ins. Co. (C. C.) 98 Fed. 932. Essentially it is a contract of accident insurance, and such it must remain to the end, unless this cannot be done without violence to its express terms. It certainly is not to be distorted, nor its provision strained, as would have to be the case if, according to the present plea, it is to be taken as an accident policy in one part and a life policy in another.

It is said, however, that an accident policy after all is a life policy, differing only from the ordinary form in that the risks are special and limited (Zimmer v. Accident Ins. Co., 207 Pa. 472, 56 Atl. 1003); and that it may therefore be legitimately extended, by special provisions, to death from any cause. But while this may in a sense be true, it has no particular application here. It might go to relieve a policy from the charge of incongruity where such a condition appears, but as an aid in the construction of the one in hand it is of little use. By express mention, even as to septicæmia and the rest, not only death but disability is covered (anæsthetics only excepted), and its character as an accident policy is thus manifestly intended to be maintained.

The question, after all has been said, is as to the purpose and meaning of the provision, which is to be determined by reference, as well to the general character of the policy, as to the terms in which the particular provision is expressed, and the connection in which it is found. Having regard to these, the correct construction, in my judgment, is the one which has been given above, according to which the plaintiff, on the face of her statement, has no case.

The demurrer is sustained, and judgment directed to be entered in favor of the defendants, with costs.