ALICE M. SMITH vs. TRAVELERS INSURANCE COMPANY.

Suffolk.    October 7, 1914. — October 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Insurance,* Against accident.

In an action on a policy of accident insurance, payable in case of death to the plaintiff, insuring a certain person against death resulting from "bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means," it appeared that the insured was using a nasal douche as he had been in the habit of doing, that he "snuffed" or drew breath into his nostril more violently than he usually did, and that consequently there passed through his nostril and thence by way of the Eustachian tube through a hole in the mastoid bone in the middle ear into his brain streptococcus germs, which caused him to die from spinal meningitis, that streptococcus germs are among the most virulent and dangerous germs known, when communicated to the brain, but that they are found somewhat frequently in the outer nose and may remain there indefinitely without harm, and that a hole in the mastoid bone through which germs can pass is a very rare occurrence, such a hole being found in only one out of about a thousand skulls. *Held,* that the plaintiff could not recover; because on this evidence it could not be found that the germs reached the brain of the insured through a means which was both external and accidental, the only external means being the act of the insured in taking the deep breath through the douche, which was exactly what he intended it to be, although it produced consequences unforeseen by him.

CONTRACT on a policy of accident insurance, payable in case of death to the plaintiff, insuring Charles G. Smith, late of Boston, against the bodily injuries there specified and against death resulting "from such injuries alone, within ninety days from the date of accident," as described in the opinion.   Writ dated March 15, 1913.

In the Superior Court the case was tried before *Fox,* J.   At the close of the plaintiff's evidence, which is described in the opinion, the judge, with the consent of the parties, ordered a verdict for the defendant and reported the case for determination by this court, with the stipulation that, if the ordering of the verdict was correct, judgment should be entered for the defendant, and that, if the case should have been submitted to the jury, judgment should be entered for the plaintiff in the sum of $7,500 with interest from the date of the writ.

*E. P. Saltonstall*, (*C. W. Blood* with him,) for the plaintiff.

*W. H. Hitchcock*, for the defendant.

SHELDON, J. The deceased, whose life was insured by the defendant against some risks, died from spinal meningitis. This disease, according to the plaintiff's evidence, was caused by the presence of streptococcus germs in the brain. The germs had penetrated into the brain from the middle ear through a hole in the mastoid bone. They had been carried into the ear from the outer nose, through the Eustachian tube, by a nasal douche which the deceased was using for catarrh, as he had been in the habit of doing, and which on this occasion he had "snuffed" or drawn into his nostril less gently or harder or more violently than he usually did. Streptococcus germs are among the most virulent and dangerous germs known; but they are found somewhat frequently in the outer nose, and might remain there indefinitely without harm. The nasal douche used by the deceased was harmless in itself; but the harm was done by the fact that he drew it too violently into his nostril, by reason whereof it reached the Eustachian tube and was carried into the middle ear, and thence penetrated into the brain. That there should be a hole or perforation in the mastoid bone through which pus or germs could pass from the ear into the brain is a very rare occurrence, in only one out of about a thousand skulls.

The policy insured the deceased against "bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means" and against death resulting "from such injuries alone" within a stated time not now material.

There is here no difficulty in saying that there could be found to have been an unbroken string of causation between the too violent inhalation of the nasal douche and the ensuing death. The too violent inhalation carried the streptococcus germs with the douche into the Eustachian tube, and everything else followed naturally. The presence of these germs in a place where, however virulent in themselves, they were harmless, and the existence of the perforation in the mastoid bone, could be found to have been conditions rather than operating causes of the illness and death. If therefore it can be said that this too violent inhalation effected a bodily injury through "external, violent and accidental means," ·

that it was itself such a means of injury, the first and chief obstacle to the plaintiff's recovery would be removed. This is the doctrine of many of the decisions relied on by her. *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351. *McGlinchey* v. *Fidelity & Casualty Co.* 80 Maine, 251. *Ludwig* v. *Preferred Accident Ins. Co.* 113 Minn. 510. *United States Mutual Accident Association* v. *Barry,* 131 U. S. 100, 121. *Preferred Accident Ins. Co.* v. *Muir,* 61 C. C. A. 456. *Manufacturers' Accident Indemnity Co.* v. *Dorgan,* 58 Fed. Rep. 945, 954. *Winspear* v. *Accident Ins. Co.* 6 Q. B. D. 42. *Lawrence* v. *Accidental Ins. Co.* 7 Q. B. D. 216. *Hamlyn* v. *Crown Accidental Ins. Co.* [1893] 1 Q. B. 750. *Turvey* v. *Brintons,* [1904] 1 K. B. 328.

But there was nothing accidental in the inhalation of this douche. The deceased did exactly what he intended to do. This particular act of inhalation, though harder or more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designed it to be, though it produced some internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental. But it is only for a death resulting from injury effected through such means that the defendant is made responsible by the policy. It is not sufficient that the death or the illness that caused the death may have been an accidental result of the external cause, but that cause itself must have been, not only external and violent, but also accidental. *Hatch* v. *United States Casualty Co.* 197 Mass. 101, 104. *Cobb* v. *Preferred Mutual Accident Association,* 96 Ga. 818. *Hastings* v. *Travelers' Ins. Co.* 190 Fed. Rep. 258. *Lehman* v. *Great Western Accident Association,* 155 Iowa, 737. *In re Scarr & General Accident Assurance Corp.* [1905] 1 K. B. 387.

In *Healey* v. *Mutual Accident Association,* 133 Ill. 556, the deceased did not know that what he drank was a poison; he took and drank it accidentally. In *Jenkins* v. *Hawkeye Commercial Men's Association,* 147 Iowa, 113, the swallowing of the fish bone that caused the death of the insured was a mere accident. In *Maryland Casualty Co.* v. *Hudgins,* 97 Texas, 124, the oysters

which caused the death were eaten by the deceased in ignorance of their unsound condition. In *Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472, the deceased had no intention of inhaling the gas which caused his death. None of these decisions is inconsistent with the view which we take of the case at bar.

In *Delaney* v. *Modern Accident Club*, 121 Iowa, 528, the defendant was held because it was the external physical injury, and not the death as distinguished from the injury, which was accidental. In *Rodey* v. *Travelers' Ins. Co.* 3 N. M. 543, *Preferred Accident Ins. Co.* v. *Patterson*, 213 Fed. Rep. 595, and *American Accident Co.* v. *Reigart*, 94 Ky. 547, there was evidence that the original injury was accidental. That was the finding made in *Bohaker* v. *Travelers' Ins. Co.* 215 Mass. 32; and this court decided that the evidence justified the finding.

We do not consider the cases in which it was contended, under various clauses in policies of insurance against accidents, that a death was due to a prior disease or infirmity and not directly or exclusively to the happening of an accident. Those cases are not applicable here.

We cannot find that there was any "external, violent and accidental means" producing the injury which caused the death other than this inhalation by the deceased of the nasal douche, which he took, not accidentally in any sense of that word, but purposely, with full knowledge of its character, and in the very way in which he intended to take it.

The burden was upon the plaintiff to show that the death resulted from bodily injuries "effected directly and independently of all other causes, through external, violent and accidental means." *Travelers' Ins. Co.* v. *McConkey*, 127 U. S. 661. That she has failed to do. It follows that judgment must be entered on the verdict for the defendant.

*So ordered.*