CONNECTICUT GENERAL LIFE INS. CO.
OF HARTFORD, CONN., v. ALLEN. *
No. 9614.

Circuit Court of Appeals, Eighth Circuit.
April 26, 1933.

*Rehearing denied May 31, 1933.

G. L. De Lacy, of Omaha, Neb. (Claude H. Voorhees, of Hartford, Conn., and J. A. C. Kennedy and Yale C. Holland, both of Omaha, Neb., on the brief), for appellant.

Dana B. Van Dusen, of Omaha, Neb. (Francis A. Brogan and Alfred G. Ellick, both of Omaha, Neb., on the brief), for appellee.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

Appellee as plaintiff brought this action against appellant to recover on a policy of accident insurance issued by appellant. For convenience the parties will be referred to as they appeared in the lower court.

Insured was the husband of plaintiff, and plaintiff was named as the beneficiary in the policy. The loss or disability against which defendant insured is described in the following pertinent provisions of the policy:

"Loss or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through accidental means * * *.

"This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, by bodily or mental infirmity, ptomaines, bacterial infections (except pyogenic infections which shall occur simultaneously with and through accidental cut or wound), or by any other kind of disease."

The petition alleged that plaintiff was designated as the beneficiary in the policy; that by the policy defendant contracted for and undertook to pay to the beneficiary therein named the sum of $12,400 in the event of the death of the insured due to "pyogenic infections which shall occur simultaneously with and through accidental cut or wound"; that on or about the 1st day of February, 1927, the insured died of pyogenic infection which occurred simultaneously with and through accidental cuts or wounds inflicted on said insured on the 10th day of January, 1927, while undergoing the extraction of an impacted molar tooth; that said extraction was attended with extreme difficulty, and that the gum tissues were cut and wounded, and that the instrument broke through the jaw bone inner

layer or the mandible and opened passages into the tissues of the neck, resulting in the infection of the neck, which infection thereafter extended down the neck tissues into the chest cavity, then into the base of the heart and then into the right pleural cavity and the pericardial sac, resulting in pleurisy with effusion and pericarditis with effusion, terminating in the death of said insured; that said cuts and wounds and infection were not intended, not usual, not expected, not foreseen, and were accidental, and were bodily injuries effected solely through accidental means and were the proximate cause of the death of said insured.

By its answer defendant preserved its special appearance theretofore filed and objected to the jurisdiction of the court, for the reason that it had not been served as by law required, and for the further reason that at the time of the commencement of the action, and at the time of the original service of process upon it, it was not conducting any business in the state of Nebraska and had not theretofore been doing business in said state, and that it was not doing business in the state of Nebraska at the time of the execution of the policy sued upon, but that the policy was executed in the state of New York; that when the policy sued upon was issued defendant maintained and still maintains its home office at Hartford, Conn., but that the policy was entered into and executed in the city of New York, state of New York, and was governed by the laws of that state; that the policy provided that no action should be brought to recover on it prior to the expiration of sixty days after proof of loss had been properly made and filed, "nor shall such action be brought at all, unless brought within two years from the expiration of the time within which proof of loss is required by the policy"; that these provisions of the policy were valid and binding under the laws of the states of New York and Connecticut, and that the action was not brought within the period provided for in the policy, nor was the proof of loss made within the required time, and hence the action was barred. The answer in addition to pleading the bar of limitation provided in the policy, also pleads that the action was barred by the statute of limitations, and also contains denial that the insured came to his death as the result of pyogenic infections occurring simultaneously with and through accidental cut or wound, and in effect denied all the material allegations of the petition, except certain formal allegations.

On the trial, at the close of all the testimony, defendant moved for a directed verdict on the grounds: (1) That the court was without jurisdiction of the person of the defendant; (2) that the action was not brought within two years from the expiration of the time within which proof of loss was required by the terms of the policy, and hence the action was barred by the provisions of the policy; and (3) that the evidence did not establish that the insured came to his death as the result of pyogenic infection occurring simultaneously with and through accidental cut or wound. The motion was denied, and the case submitted to the jury, and a verdict returned in favor of plaintiff. From the judgment entered thereon defendant has perfected this appeal, urging: (1) That the policy provisions limiting suit to two years were binding, and barred the right to maintain this action; (2) that the court was without jurisdiction of the person of defendant, and its special appearance and objection should have been sustained; (3) that the evidence was insufficient to support the verdict and judgment; and (4) errors in the rulings upon evidence.

In the briefs filed by counsel on either side the question of the jurisdiction of the court and the contractual limitation of the time within which action could be brought upon the policy have been very elaborately briefed, but in our view of the case the controlling issue is whether or not there was substantial evidence tending to show that the insured's death resulted, directly, independently, and exclusively of all other causes, from bodily injuries effected solely through accidental means, and whether his death was caused by pyogenic infection, which occurred simultaneously with and through accidental cut or wound. The evidence tended to show the following facts: Insured was forty-eight years old, weighed between 190 and 200 pounds, was over six feet tall, was rugged, and had led an unusually energetic outdoor life. On January 22, 1927, he went to the office of a dentist in Omaha, Neb., for the purpose of having an impacted tooth extracted, or treated. An impacted tooth, it seems, is one which has not come through the gum, and is out of position with reference to the other teeth. An X-ray was taken, which disclosed a necrotic area around the crown of the tooth, indicating an infected condition of some standing. The tooth pointed inward, and the root stuck out into the bone. The dentist undertook to remove the tooth surgically, and because of its peculiar formation it was necessary to remove it from the lingual side of the jaw. The details of the operation need not be recited, but the case proved to be an unusual one.

The tooth was many times broken in attempting to extract it, and the operation consumed about four hours' time. Serious infection followed, which spread into the throat and tissues of the neck, causing an abscess in the deep tissues of the neck and an inflammation in the muscles of the neck. Physicians who were later called, testified that there were several cuts and bruises about the gum, any one of which might have acted as a portal of entry for infection into the neck; that there was a large jagged cavity from which the tooth had been extracted, and that the floor of the mouth was swollen, as was also the floor of the throat. Dr. Heagey, called on behalf of plaintiff, referring to the operation which had been performed upon the insured, testified: "The process of extracting the tooth which, as the X-ray taken of the mouth on April 30, 1926, and which Mr. Robinson gave to me, shows that the tooth or that third molar on that right side was lying at right angles to the second molar, and that the dentist in his work in extracting the tooth opened the tissues down on top of the tooth and found it firmly embedded so that chiseling, cutting and scraping and spreading of the tissues were necessary for the purpose of getting alongside and underneath this tooth. In his efforts to do this the wound had to be increased several times the normal wound for the extraction of a tooth of this type, and the tissues which are attached to the jaw in the region of this tooth and form the floor of the mouth were torn away, possibly cut, by this effort to enlarge the wound over a period of three or four hours to get at the tooth. The floor of the mouth dropped away, as it were, from the jaw, leaving the tissues of the neck and the back of the throat completely exposed to infection."

Plaintiff's witness Dr. Kully testified: "There were several cuts and bruises about this gum, any one of which might have acted as a portal of entry into the neck. I didn't probe these and I doubt whether one could have told, if they were probed, which one was responsible, because any one might have acted as a portal of entry, and another condition that might have acted as a portal of entry was a possibility of a break of the inner wall of this jaw bone."

There was other testimony of like character, from some of which it might be gathered that the methods used by the dentist were not in accord with the best practice, or that the operation was not skillfully performed; but there was no testimony produced by the plaintiff tending to prove that any injury had been inflicted upon insured by accidental means. On the other hand, the dentist positively testified, and in this he is corroborated by his assistant, that all the instruments used by him in extracting the tooth had been thoroughly sterilized; that he had no accident which cut or wounded the floor of the mouth; that he made some definite cuts, but that he had no misfortune; that none of his instruments slipped outside of the tooth cavity, and that each incision which he made was intentionally made in performing the operation. Counsel for appellee advance the theory that the infection entered the neck through a portal "either made through ignorance or unfortunate slipping of instruments, or the exertion of too much force thereon." Their contention is further expressed as follows: "A cut does not have to be unintentional in order to be accidental; this is in harmony with the theory of all of the cases relied upon by appellee where an intended act produces an unintended result. If a cut is intended, but reaches an unintended vital part, or if a cut is intended but made through ignorance of the consequences, or reckless of consequences, then it is accidental."

■ These contentions, we think, are not tenable. The policy covers death by bodily injury effected directly through accidental means. The bodily injury must be the exclusive cause of the death, and the policy provides that it shall not cover bacterial infections, except pyogenic infections, which shall occur simultaneously with and through accidental cut or wound. It was incumbent upon plaintiff to prove that the insured's death resulted from a bodily injury which was effected solely through accidental means, and it was incumbent upon her to prove that the pyogenic infection occurred simultaneously with and through an accidental cut or wound. Lincoln Nat. Life Ins. Co. v. Erickson (C. C. A. 8) 42 F.(2d) 997, 1000; Order of United Commercial Travelers v. Shane (C. C. A. 8) 64 F.(2d) 55. See also: Ramsey v. Fidelity & Casualty Co., 143 Tenn. 42, 223 S. W. 841, 13 A. L. R. 651; Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56; Zach v. Fidelity & Casualty Co. (Mo. App.) 272 S. W. 995.

■ This case is ruled by the decision of this court in Lincoln National Life Insurance Company v. Erickson, supra, where, in an opinion by Judge Booth, it is among other things said: "There was no direct proof, however, how, where, when, or under what circumstances the abrasion was produced, and no proof whatever of any accidental

means producing the abrasion. *The abrasion may have been intentionally produced and with means expressly selected for the purpose.* [Italics supplied.] And there was no proof that the bodily injury, namely, the abrasion, caused the death. The death, according to the medical testimony, was caused by the streptococcic infection in the blood. The abrasion, of course, did not create or produce the streptococci, nor cause them to enter the blood; at most it afforded an opportunity for them to enter. So far as the evidence shows, the streptococci may have entered the blood at the time the abrasion was made or some time after the abrasion was made."

So, in the instant case, there is no room for speculation as to the cuts in the mouth of the deceased being intentionally produced, and that they were produced, not by accidental means, but "by means expressly selected for the purpose." As said by this court in the Erickson Case, supra: " * * * The deceased was insured, not against accidental results of intended means, but against death resulting from a bodily injury effected directly through external, violent, and *accidental means.* It may be proper enough, loosely to speak of the death as an accidental one; but the evidence, in our judgment, fails to show a death resulting from a bodily injury effected directly by accidental means." And further the court said: "It is just as possible in the case at bar that deceased himself intentionally opened a pimple on his chin, either at home or in the barber shop, or that he directed the barber so to do, as that the abrasion was accidentally caused."

It seems too plain for argument that the evidence in this case does not establish that insured's injury resulting in his death was effected by accidental means. It is possible there may have been cuts and abrasions which should not have been made, but there were none which were not intended to be made, and if the testimony was as consistent with the hypothesis that the infection entered through an incision intentionally made as that it entered through an incision unintentionally made, then it tended to prove neither, and as the burden of proof was on the plaintiff, she could not recover. Eggen v. United States (C. C. A. 8) 58 F.(2d) 616.

In view of the exhaustive opinion of Judge Booth in Lincoln National Life Insurance Company v. Erickson, supra, any further discussion of the question would be a supererogation. Defendant's motion for a directed verdict should have been sustained.

As this is decisive of the case, we pretermit a consideration of the other questions presented.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent herewith.