## LOWREY v. UNITED STATES.

### No. 12137.

Circuit Court of Appeals, Eighth Circuit.

May 20, 1942.

478

C. Floyd Huff, Jr., of Hot Springs, Ark., and M. Drew Bowers, of Little Rock, Ark., for appellant.

Thomas C. Pitts, Asst. U. S. Atty., of Fort Smith, Ark. (Clinton R. Barry, U. S. Atty., and John E. Harris and Charles A. Beasley, Jr., Asst. U. S. Attys., all of Fort Smith, Ark., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellant was convicted on an indictment charging him with the unlawful possession of distilled spirits in violation of 26 U.S.C.A. Int.Rev.Code, § 2803, requiring the containers of such spirits to have affixed stamps denoting the quantity contained and evidencing payment of internal revenue taxes. The appellant's conviction depends entirely upon evidence obtained by state officers by an unlawful search of the appellant's residence and the seizure there of distilled spirits. The question presented is whether the rights of the appellant under the Fourth and the Fifth Amendments to the Federal Constitution were denied by the admission of evidence so obtained. Appellant raised the point in the lower court by a motion to quash the indictment and suppress the evidence made prior to the trial and renewed at the trial; by objection to the evidence at the trial; and by a motion for a directed verdict.

On the day of his arrest the appellant lived with his wife and minor children in his home near the city of Hot Springs, Arkansas. On that day police officers of the city of Hot Springs and deputy sheriffs of the county in which Hot Springs is situated, appeared at the appellant's home and, under color of a state search warrant, the invalidity of which is shown by the evidence and conceded by the government, proceeded to search the premises. There they discovered beneath the floor of one of the bedrooms fifty-eight gallons of distilled spirits, the containers of which were without the stamps required by law. One of the county officers communicated with his superior at the courthouse in Hot Springs and requested that an agent of the Alcohol Tax Unit of the Treasury Department of the United States be notified at once of the arrest of the appellant and that a truck be sent to bring in the liquor.

A truck was dispatched to the scene of the arrest and as soon as the liquor could be loaded, the arresting officers with the appellant and the truck started for the courthouse. On the way they were joined by an agent of the Alcohol Tax Unit, a Mr. Oliver, who proceeded with them to the courthouse and preferred the charge against appellant which resulted in his conviction. About one hour intervened between the arrival of the state officers at the appellant's home and the meeting with the agent of the Alcohol Tax Unit. Immediately upon his arrival at the courthouse, the federal agent communicated with his superior in Little Rock and received authority to adopt the case against the appellant. He thereupon took appellant into custody and arraigned him before a United States commissioner. The appellant was not prosecuted in the state courts.

All of the state and federal officers testified that there was no agreement among them under which the state officers made arrests in such cases for or on the behalf of the federal officers. In the present case, the federal officers were not advised of the arrest of the appellant until after it had been made. But all of the officers, state and federal, agreed that it was a long continued and invariably followed practice in the county where the arrest was made that cases of this character should be tendered to the federal officers for prosecution under the federal law if in their judgment the amount of liquor involved was sufficient to justify a federal prosecution. Although the state officers did not know in advance of any particular arrest that the prosecution would be tendered to the federal officers, it was understood by them and the federal officers that in cases of sufficient importance prosecution would be offered to and would be adopted by the federal officers.

This practice was so well understood by the officers that an agreement among them prior to any particular arrest was wholly unnecessary. One of the state officers gave as the reason for it the fact that penalties under the state laws were not severe enough to deter violators. The statement supports the conclusion to which all the evidence points, that is, the practice of the state officers to deliver the accused to the federal officers in conformity

to their ideas of effective law enforcement, a practice in which the federal officers, with full understanding, gave their willing cooperation.

Before the arresting party had been joined by Mr. Oliver, the federal officer, the appellant had requested the state officers to make a state case against him. According to his testimony, he was told that the decision of this question was entirely "up to Mr. Oliver". At the first opportunity he repeated his request to Mr. Oliver, advising him of his conversation with the state officers. According to the appellant, Mr. Oliver refused, but stated he would take the appellant before the United States commissioner and let him make bond. Agent Oliver admitted that the appellant asked him to permit the state officers to prosecute appellant in the state court and that he replied that he had no control over the matter until after he had communicated with his superior in Little Rock.

The appellant also introduced as a witness one Irvin Outler, a former police officer in the city of Hot Springs. This witness testified that following a former trial and acquittal of the appellant on a liquor charge in the federal court at Little Rock, he was present at the city jail in Hot Springs when a number of state and federal officers were discussing appellant's acquittal. During the course of the conversation, one of the state officers said in the presence of Mr. Gibson, an agent of the Alcohol Tax Unit: "We'll get him again for you," to which Mr. Gibson replied: "All right". Mr. Gibson was a witness for the government at the trial of the appellant. He was not called by the government to deny the testimony of the witness Outler.

■■■ The evidence obtained as a result of the search and seizure in this case should have been suppressed. It is true that evidence obtained by state officers, acting entirely upon their own account and without participation or cooperation of federal officers, is admissible in prosecutions by the federal government. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381. But it is also held that where the state and federal officers have the understanding and operate under the practice revealed by the evidence in this case, under which the prosecution of the offender is invariably tendered to the federal officers and by them accepted if the offense is considered of sufficient importance, the evidence obtained in the course of the unlawful search by state officers must be excluded. Sutherland v. United States, 4 Cir., 92 F.2d 305; Byars v. United States, supra; Gambino v. United States, supra; Fowler v. United States, 7 Cir., 62 F.2d 656; Ward v. United States, 5 Cir., 96 F. 2d 189.

In Sutherland v. United States, supra [92 F.2d 307], the search and seizure was made by a state officer by whom the defendant was turned over to the federal officers for prosecution in the federal court. It was stipulated in the record "that state officers generally understood that where they have made a seizure of illicit liquor they are at liberty to consult with the federal officers with a view to determining whether or not the federal officers adopt the case and institute a federal prosecution against the particular offender; that they frequently do pursue this course and that frequently such cases are adopted". The Circuit Court of Appeals for the Fourth Circuit held that the evidence obtained by the state officers in such circumstances was inadmissible in the federal prosecution, holding that the fact that there was such cooperation between the state and federal officers, as revealed in the stipulation quoted, required exclusion of the testimony. In Fowler v. United States, supra, the evidence revealed a long time definite understanding and practice between the state police and the federal prohibition officers whereby in the event the quantity of liquor seized was sufficiently large, the case was tendered to the federal officers and prosecuted by them. In holding the evidence secured by the state officers in an unlawful search and seizure by them as inadmissible in a federal prosecution the court [62 F.2d 657] said: "It would hardly be consistent with a proper regard for the protection accorded by the Fourth Amendment to permit any department of the federal government in this manner to set the amendment at defiance." In Ward v. United States, supra, the evidence secured by state officers in an unlawful search and seizure was excluded though the evidence showed that no federal officer participated in the unlawful search or seizure or knew of the arrest before it was made; but the state officer making

the arrest had promised the federal officers to make it and turn the defendant over to them.

The testimony of the witness Outler in the present case is of the same character as that before the court in the Ward case. If this was not sufficient to show that the particular arrest was made in compliance with an agreement between the state and the federal officers, it did point to the general understanding among them, and it becomes important in the present case in connection with the admitted practice followed by the officers of both jurisdictions. It is also significant that the testimony of the witness Outler is not denied by the federal officer with whom the agreement is supposed to have been made. That officer was a witness for the government in the court below and, so far as the record goes, was available to refute Outler's testimony. This testimony was material for, if true, it required the suppression of the government's evidence. In such circumstances the unexplained failure of the government to place the witness Gibson on the stand justifies the inference that his testimony, if presented, would have been unfavorable to the prosecution. Lincoln National Life Insurance Company v. Erickson, 8 Cir., 42 F.2d 997; Mammoth Oil Company v. United States, 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137.

The constitutional guarantee against unlawful searches and seizures must be liberally construed in favor of the individual. "The Fourth Amendment' was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right." Byars v. United States, supra [273 U.S. 28, 47 S.Ct. 250, 71 L.Ed. 520]. We think the evidence upon which appellant's conviction rests was wholly inadmissible. To hold the contrary would be to give sanction to prohibited official action simply because accomplished by "indirect and circuitous methods".

The judgment appealed from is reversed and the cause remanded with directions to the district court to sustain appellant's motion to suppress the evidence.

THOMAS, Circuit Judge (dissenting). In my opinion the judgment should be affirmed.

It is settled by the decisions of the Supreme Court cited in the majority opinion that evidence of crime discovered by a federal officer in making a search with a warrant invalid under the Fourth Amendment to the Constitution is not admissible against the victim of the unlawful search over his timely objection; that the federal government may use evidence improperly seized by state officers operating entirely upon their own account; but evidence obtained by state officers through wrongful search and seizure in cooperation with federal officials must be excluded.

Difficulty arises in applying these rules where it is claimed the unlawful seizure was made by the cooperation of the state and federal officials. In such a case if federal officials were present during the search, even though the search were made by the state officers, the evidence must be excluded. The same is true if the unlawful search were made by state officers under the direction of federal officers. But to exclude such evidence the search must be made solely on behalf of the United States. The evidence is admissible when a law of the state makes criminal the acts with which the defendant is charged and the seizure may have been made in enforcing the state law. Gambino v. United States, 275 U.S. 310, 316, 317, 48 S.Ct. 137, 72 L. Ed. 293, 52 A.L.R. 1381.

There is no showing here that the arrest, search and seizure were made solely for the purpose of aiding in the prosecution of a federal offense. It appears that a law of the state made criminal the acts with which the defendant was charged. The search and seizure were made by state officers whose duty it was to enforce the state law. The record shows that no federal official had anything to do with the wrongful seizure of defendant's property, or any knowledge thereof, until after the arrest was made and the property was taken. The prosecution in the federal court was not in effect a ratification of any acts of state officers done by prearrangement on behalf of the United States.

The agents of the Alcohol Tax Unit of the Treasury Department of the United States stationed at Hot Springs had no authority to adopt a prosecution for violation of the federal liquor laws until authorized to do so by their superior offi-

cer at Little Rock. There is no showing that the officer at Little Rock had any knowledge of the practice of the state officers at Hot Springs to tender important cases to the federal authorities for prosecution in the federal court, or that he ever approved or ratified such practice; and the local federal agent, at the time he instituted the proceeding in the federal court, did not know that the seizure had been made by the state officers under an invalid search warrant. The testimony of the state officers in reference to their past practices and of the witness Irvin Outler does not seem to me sufficient to warrant a reversal of the finding of the trial court nor to bring the case within the field of activities of federal officers denounced by the decisions of the Supreme Court. Compare Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376; Goldman v. United States, 62 S.Ct. 993, 86 L.Ed. ——; and Goldstein v. United States, 62 S.Ct. 1000, 86 L.Ed. ——, decided April 27, 1942. I can find no place in the record where the federal officers did wrong or where they invaded the constitutional rights of the appellant.