## UNITED STATES v. HORTON et al.
### Cr. A. No. 5378.

United States District Court
W. D. Michigan, S. D.
Sept. 7, 1949.

---

1. No opinion for publication.

Joseph F. Deeb, United States Attorney, Grand Rapids, Mich., and Kenneth P.

Hansma, Assistant United States Attorney, Grand Rapids, Mich., for plaintiff.

Julius Lucius Echeles, Chicago, Ill., for defendants.

STARR, District Judge.

Defendants Willie M. Horton and Ernest Davidson, Jr., were indicted by a grand jury in this court on May 10, 1949. Count one of the indictment charged that on or about April 9, 1949, defendants knowingly and fraudulently transported from Chicago, Illinois, to Kalamazoo, Michigan, a quantity of narcotic drugs, to-wit: approximately one ounce of cocaine, knowing the said drugs to have been unlawfully imported into the United States. 21 U.S.C.A. § 174. Count two charged that on or about April 9, 1949, the defendants unlawfully and knowingly transported from Chicago, Illinois, to Kalamazoo, Michigan, a quantity of marihuana, to-wit: five marihuana cigarettes, without having, prior to transporting them, paid the tax imposed by section 3230 of the Internal Revenue Code, 26 U.S.C.A. § 3230, and without having, prior to transporting said marihuana, registered their names, style, and place of business with the Collector of Internal Revenue for the District of Michigan, as required by section 3231 of the Internal Revenue Code, 26 U.S.C.A. § 3231. 26 U.S.C.A. § 3234(b).

Defendants, who were represented by counsel, were arraigned on May 12, 1949, and entered pleas of not guilty. On the same date they filed motion to suppress the evidence seized by the officers and to quash the indictment against them, on the ground that their arrests and the searches incident thereto were without warrants and were illegal because in violation of their constitutional rights under the Fourth and Fifth Amendments[1] of the Constitution of the United States. In other words, the defendants claim that the evidence obtained by the arresting officers was obtained by means of an unreasonable search and seizure, contrary to the provisions of the Fourth Amendment, and that to permit the introduction of that evidence would amount to a violation of the self-incrimination clause of the Fifth Amendment.

The pertinent events leading up to and culminating in the arrests and searches here in question are as follows: Arrangements had been made through one Frank Murphy of Kalamazoo, Michigan, to have defendant Willie Horton come from Chicago, Illinois, to Kalamazoo and make a sale of narcotics to one "Rusty." "Rusty" was in fact a Federal narcotic agent. The sale was to be consummated at the home of said Frank Murphy in Kalamazoo some time during the night of April 8, or the early morning of April 9, 1949. In pursuance of this plan, detectives Dykehouse and Sackett of the Kalamazoo police department and two Federal narcotic agents (one of whom was "Rusty") maintained a vigil at Murphy's home throughout the night of April 8th. During the night several long-distance telephone calls were made to Murphy by a person who said that his name was Willie and who was identified by Murphy as being defendant Willie Horton. These conversations were overheard by detective Dykehouse, who listened at an extension of the main telephone or stood so near the receiver of the main telephone as to be able to overhear the conversation. In these conversations the person who identified himself as Willie indicated that he was on his way from Chicago to Kalamazoo to make the arranged sale to "Rusty." The last call was received at about four o'clock in the morning of April 9th, at which time the person calling asked if the buyer was still there and stated that he was in Paw Paw, Michigan, and would arrive at Murphy's home in a few minutes. Paw Paw is about 16 miles from Kalamazoo. The officers continued their vigil for several hours, but de-

---

1. The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fifth Amendment provides in part:

"Nor shall (any person) be compelled in any criminal case to be a witness against himself."

fendant Horton did not arrive. Thinking that he would not appear, the officers left the premises at about 7:30 in the morning, and detective Dykehouse told Murphy to telephone him if Horton arrived. At about nine o'clock detective Dykehouse received a telephone call from Murphy advising him that Horton had arrived and was ready to consummate a sale. A few minutes later detective Dykehouse received another telephone call from Murphy advising him that Horton was "scary" and had left, and that he had driven to the top of a hill about a block from Murphy's home and was parked there in a 1947 gray Ford sedan. Detective Dykehouse immediately dispatched detectives Sackett and Gerlofs to that area and followed in his own car shortly thereafter. Detectives Sackett and Gerlofs found a 1947 gray Ford sedan parked about a block from Murphy's home, and as they swung their car in front of the parked vehicle, they observed the occupant reach into his right-hand coat pocket and then bend down in the car as though he were placing something under the front seat. The occupant of the car was defendant Horton. He was placed under arrest and both he and his automobile were searched. Detective Dykehouse arrived at the scene shortly after the arrest and assisted in the search. Under the driver's seat of the automobile detective Sackett found a small bottle, similar to a perfume bottle, which was from one-fourth to one-third full of a white powder. Upon questioning, defendant Horton told the officers that the automobile in which he was found was owned by one Ernest Davidson and that Davidson had been dropped off at another address in Kalamazoo to visit a girl friend. The officers attempted to locate Davidson but were unsuccessful. Defendant Horton was taken to police headquarters by the officers, accompanied by Murphy and a girl named Muncie, who lived in Murphy's house. There, at the direction of the police officers, Murphy and the girl Muncie tasted the white powder in the small bottle found in the automobile at the time of defendant Horton's arrest and identified it as cocaine. On the witness stand Murphy testified that he had been using cocaine for a number of years and that he was able to distinguish it by taste.

At about 11 a. m. detective Sackett received a telephone call at police headquarters from someone he thought to be Frank Murphy, advising him that Ernest Davidson was at the Speedway hotel in Kalamazoo. The caller did not identify the number of the room, but indicated its physical location on the second floor. The room so described was room 10. Detectives Dykehouse, Sackett, and Gerlofs went immediately to the Speedway hotel. Detective Sackett inquired of a Florence Emerson, who was in charge of the hotel at the time, regarding the occupant of room 10, and she replied that a man was in the room but that she did not know his name as she had not registered him in. She was asked to awaken the occupant, whereupon she accompanied the officers to room 10 and knocked on the door. The person occupying the room asked who was there and was informed by Florence Emerson that it was the landlady and was told by detective Gerlofs that police officers were also there. The occupant of the room opened the door and was asked if he was Ernest Davidson. He admitted that he was, and was thereupon placed under arrest. At the time of his arrest defendant Davidson was clad only in his underclothing. He was asked if certain outer clothing in the room was his, and he replied that it was. A search of the clothing disclosed a marihuana cigarette. Upon searching the room, the officers found concealed between a sink and the wall four other marihuana cigarettes and two small envelopes containing cocaine.

The question presented by the motion to suppress the evidence and quash the indictment is whether or not the arrest of defendant Horton and defendant Davidson, and the searches conducted incident thereto, were unlawful in the light of the Fourth and Fifth Amendments of the Constitution of the United States. The government concedes that the arrests and searches here in question were conducted without warrants and with the active cooperation of city police officers and Federal narcotic agents. However, it claims that the arrests of de-

fendants were lawful because the arresting officers had reasonable ground to believe that the defendants had committed a felony, and that since the arrests were lawful, the searches incident thereto were likewise lawful.

■ It is well settled that in a Federal prosecution, evidence of crime obtained through unlawful search and seizure by State officers, cooperating with Federal officials, may not be used against the victim of the unlawful search, where a timely challenge has been interposed. Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; United States v. Butler, 10 Cir., 156 F.2d 897; Lowrey v. United States, 8 Cir., 128 F.2d 477; Sutherland v. United States, 4 Cir., 92 F.2d 305; Fowler v. United States, 7 Cir., 62 F.2d 656.

■ The court will consider first the legality of the arrest without warrant of defendant Horton. In the absence of an applicable Federal statute, the validity of an arrest without warrant is determined by the law of the State where the arrest takes place. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. Defendants were arrested in Michigan. Section 764.15 of the Michigan Compiled Laws of 1948 provides in part:

"Any peace officer may, without a warrant, arrest a person—* * *

"(c) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it;

"(d) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it."

■ In People v. Licavoli, 245 Mich. 202, 222 N.W. 102, the court said: "The rule is pretty well settled that if an officer believes, and has good reason to believe, that one has committed a felony, or is committing a felony in his presence, he has probable cause, as the term is used, and may arrest without a warrant." See also

People v. Orlando, 305 Mich. 686, 9 N.W.2d 893.

■ In Worthington v. United States, 6 Cir., 166 F.2d 557, 562–565, the court said: "The Fourth Amendment guarantees the right of the individual to be secure against unreasonable arrests as well as against unreasonable search of houses and seizure of papers and effects. See United States ex rel. Potts v. Rabb, 3 Cir., 141 F.2d 45. Its protection extends to all equally–to those justly suspected and accused as well as the innocent; to offenders, as well as to the law abiding. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775.

"But the Amendment does not denounce all searches and seizures, but only those that are unreasonable. Carroll v. United States, 267 U.S. 132, 133, 147, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. An arrest may be made, without a warrant, for a felony, although its commission was not in the presence of the arresting officer, provided the officer had probable cause to believe that the person arrested had committed the felony. Probable cause for arrest depends upon the particular facts known to the arresting officer, before or at the time of the arrest, and such an arrest must be upheld in case the facts are sufficient, in the opinion of the court, to establish such probable cause. Wisniewski v. United States, 6 Cir., 47 F.2d 825. If the information at the disposal of an arresting officer is wholly insufficient to justify the issuance of a warrant for arrest, an arrest in such a case with an invalid warrant, or with no warrant at all, would be an illegal arrest. * * *

"With these preliminary observations, we come to the question whether the arrest of appellant was lawful, or whether it was in violation of her constitutional rights. In Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 548, 69 L.Ed. 1032, the court said:

" ' "Probable cause" has been defined by this court as "reasonable ground of suspicion, supported by circumstances suffi-

ciently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged." Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035.

" 'In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant.'

\*       \*       \*       \*       \*       \*

"The facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest. In no case may an arrest or a warrant for arrest be based upon opinion or suspicion of some person unsupported by personal knowledge of facts, United States ex rel. King v. Gokey, supra, D.C., 32 F.2d 793, and in no case may a warrant to search a private home rest upon mere affirmance of suspicion or belief without disclosure of supporting facts and circumstances. Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159."

In Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, the court said: " 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion [Carroll v. United States], 267 U.S. 132, at 161, 45 S.Ct. 280, at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790."

Therefore, the legality of the arrest of defendant Horton depends upon whether or not the facts in the possession of the arresting officers at the time of his arrest were sufficient to warrant a man of reasonable prudence and caution in the belief that defendant Horton had committed a felony. At the time of Horton's arrest, the arresting officers were in possession of the following information:

(1) They had personal knowledge of the arranged plan whereby a man named Willie Horton was to come from Chicago to Kalamazoo to make a sale of narcotics to one "Rusty," who was in fact a Federal narcotic agent.

(2) They had personal knowledge that Willie Horton was to arrive in Kalamazoo in the early morning of April 9, 1949, to make the arranged sale to "Rusty." This information was obtained by detective Dykehouse in the presence of detective Sackett, one of the arresting officers, by actually listening in on telephone conversations between one Frank Murphy and a person identifying himself as Willie, who Murphy said was Willie Horton.

(3) They had been informed that Willie Horton had arrived in Kalamazoo, was ready to proceed with the sale of narcotics, and could be found parked in a 1947 gray Ford sedan on a hill about a block from the informer's home. This information was obtained from Murphy, who had telephoned detective Dykehouse of Horton's arrival. Detective Dykehouse relayed this information to the arresting officers, detectives Sackett and Gerlofs, and directed them to proceed to Murphy's home and investigate.

(4) Upon investigation, the arresting officers saw a 1947 gray Ford sedan parked on a hill about a block from Murphy's home. As they approached the car, they

observed the occupant of the car reach into his right-hand coat pocket and then bend down in the car as though he were seeking to place something under the front seat.

Armed with this information, the officers arrested the occupant of the car. The question is—was this information sufficient to justify a man of reasonable prudence and caution in the belief that the occupant of the car had committed a felony? The court is convinced that it was. It should be noted that there is a distinct difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest. This distinction was well stated in the recent case of Brinegar v. United States, supra:

"There is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.

"For a variety of reasons relating not only to probative value and trustworthiness, but also to possible prejudicial effect upon a trial jury and the absence of opportunity for cross-examination, the generally accepted rules of evidence throw many exclusionary protections about one who is charged with and standing trial for crime. Much evidence of real and substantial probative value goes out on considerations irrelevant to its probative weight but relevant to possible misunderstanding or misuse by the jury.

"Thus, in this case, the trial court properly excluded from the record at the trial, cf. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, Malsed's testimony that he had arrested Brinegar several months earlier for illegal transportation of liquor and that the resulting indictment was pending in another court at the time of the trial of this case. This certainly was not done on the basis that the testimony concerning arrest, or perhaps even the indictment, was surmise or hearsay or that it was without probative value. Yet the same court admitted the testimony at the hearing on the motion to suppress the evidence seized in the search, where the issue was not guilt but probable cause and was determined by the court without a jury.

"The court's rulings, one admitting, the other excluding the identical testimony, were neither inconsistent nor improper. They illustrate the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt. Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

"However, if those standards were to be made applicable in determining probable cause for an arrest or for search and seizure, more especially in cases such as this involving moving vehicles used in the commission of crime, few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end. Those standards have seldom been so applied.

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

█ Viewed in its entirety, the information in the possession of the arresting officers in the present case constituted more than mere suspicion or conjecture. Although some of it was hearsay in nature, the material parts were supported by personal knowledge of facts on the part of the arresting officers. The court is convinced that the information upon which the officers acted was sufficient to warrant a man of reasonable prudence and caution in the belief that defendant Horton had committed a felony. Therefore, his arrest without warrant was lawful. Having concluded

that defendant Horton's arrest was lawful, the next question is whether or not the search without warrant of the automobile in which he was arrested was likewise lawful. The law applicable to the search of an automobile believed to contain contraband goods is stated in Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543, 39 A.L.R. 790: "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."

This holding in the Carroll case was reaffirmed in the recent case of Brinegar v. United States, supra. The court is of the opinion that the same facts which constituted probable cause for defendant Horton's arrest also constituted probable cause for the search of the automobile in which he was arrested. The information in the possession of the arresting officers, which has been outlined above, gave them probable cause to believe that defendant Horton was carrying narcotics, either on his person or in the automobile in which he was apprehended. The search was not of permanent premises, but of a movable vehicle, and the arresting officers had neither the time nor the opportunity to obtain a search warrant. The court concludes that the search without warrant of the automobile in which defendant Horton was arrested and the seizure of the contraband found therein were lawful because based on probable cause.

Turning now to the arrest of defendant Davidson, it is clear that the information in the possession of the arresting officers at the time of his arrest was much less substantial than that pertaining to defendant Horton. There is nothing in the record to indicate that the officers had ever heard of Davidson prior to Horton's arrest. When Horton was arrested, he was questioned as to the ownership of the automobile he was occupying and stated that it belonged to Davidson. When asked where Davidson was, he replied that Davidson had been dropped off at another address in Kalamazoo to see his girl friend. This meager information was all that was imparted to the officers by defendant Horton, and was the first inkling that the officers had of Davidson's existence. The next item of information concerning Davidson was received by the arresting officers a few hours later, when detective Sackett received a telephone call from someone he thought to be the informer Murphy, stating that Davidson was at the Speedway hotel in Kalamazoo. Thus, the information in the possession of the arresting officers at the time of Davidson's arrest may be summarized as follows:

(1) The automobile in which defendant Horton was arrested was said by him to belong to one Ernest Davidson.

(2) A small perfume bottle containing a white powder (identified prior to Davidson's arrest as cocaine by taste test) was found in the automobile. However, there was nothing to indicate that the bottle belonged to Davidson. On the contrary, defendant Horton said it belonged to him.

(3) Ernest Davidson was in room 10 of the Speedway hotel in Kalamazoo.

Considering this information as a whole, the court concludes that it was not sufficient to warrant a man of reasonable prudence and caution in the belief that defendant Davidson had committed a felony. Therefore, his arrest without warrant was unlawful.

Moreover, even assuming the legality of defendant Davidson's arrest, the subsequent search without warrant of his hotel room was clearly unlawful. In the recent cases of Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, and McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, the Supreme Court of the United States has unequivocally limited the circumstances under which police officers may search a dwelling house or hotel room without a search warrant. In the Trupiano case the court said, 334 U.S. at pages 705, 708, 68 S.Ct. at page 1232, 92 L.Ed. 1663:

"It is a cardinal rule that, in seizing goods and articles, law enforcement agents

must secure and use search warrants wherever reasonably practicable. Carroll v. United States, supra, 267 U.S. [132] at page 156, 45 S.Ct. [280] at page 286 [69 L.Ed. 543, 39 A.L.R. 790]; Go-Bart Importing Co. v. United States, supra, 282 U.S. [344] at page 358, 51 S.Ct. [153] at page 158 [75 L.Ed. 374]; Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 467, 76 L.Ed. 951; Johnson v. United States, 333 U.S. 10, 14, 15, 68 S.Ct. 367, 369, 370 [92 L.Ed. 436]. This rule rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities. United States v. Lefkowitz, supra, 285 U.S. [452] at page 464, 52 S.Ct. [420] at page 423 [76 L.Ed. 877, 82 A.L.R. 775]. In their understandable zeal to ferret out crime and in the excitement of the capture of a suspected person, officers are less likely to possess the detachment and neutrality with which the constitutional rights of the suspect must be viewed. To provide the necessary security against unreasonable intrusions upon the private lives of individuals, the framers of the Fourth Amendment required adherence to judicial processes wherever possible. And subsequent history has confirmed the wisdom of that requirement. * * *

"A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right. It grows out of the inherent necessities of the situation at the time of the arrest. But there must be something more in the way of necessity than merely a lawful arrest. The mere fact that there is a valid arrest does not ipso facto legalize a search or seizure without a warrant. Carroll v. United States, supra, 267 U.S. at page 158, 45 S.Ct. at page 287 [69 L.Ed. 543, 39 A.L.R. 790]. Otherwise the exception swallows the general principle, making a search warrant completely unnecessary wherever there is a lawful arrest."

In the McDonald case the court said, 335 U.S. at pages 454-456, 69 S.Ct. at page 193:

"Where, as here, officers are not responding to an emergency, there must be com-

pelling reasons to justify the absence of a search warrant. A search without a warrant demands exceptional circumstances, as we held in Johnson v. United States, supra, [333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436]. * * *

"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals."

In Johnson v. United States, supra, petitioner was convicted on four counts which charged violation of the Federal narcotic laws. The question before the court was whether or not it was lawful, without a warrant of any kind, to arrest the petitioner and to search her living quarters. The circumstances under which the arrest and search were made were as follows: At about 7:30 in the evening detective lieutenant Belland, an officer of the Seattle police force, narcotic detail, received information from a confidential informer, who was also a known narcotic user, that unknown persons were smoking opium in the Europe hotel. The informer was taken back to the hotel to interview the manager, but he returned at once saying he could smell burning opium in the hallway. Belland communicated with Federal narcotic agents, and between 8:30 and 9 o'clock went back to the hotel with four such agents. All were experienced in narcotic work and recognized at once a strong odor of burning opium, which to them was distinctive and unmistakable. The odor led to petitioner's room. The officers did not know who was occupying that room. They demanded entry under color of office, and gained access to the room. They arrested the petitioner and conducted a search of her room, which revealed incriminating opium and smoking apparatus, the latter being warm,

apparently from recent use. This evidence the District Court refused to suppress before trial and admitted over defendant's objection at the trial. Conviction resulted, and the Court of Appeals affirmed. 9 Cir., 162 F.2d 562. Upon certiorari to the Supreme Court of the United States, the conviction was reversed on the ground that the arresting officers did not have probable cause to arrest petitioner and that the search of petitioner's home without a warrant was a violation of her rights under the Fourth Amendment. The court stated, 333 U.S. at pages 13-15, 68 S.Ct. at page 369:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction. * * *

"If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required."

In the present case, as in the Johnson case, the search was of permanent premises and not of a movable vehicle. Likewise, defendant Davidson was unaware of the fact that the officers knew where he was located. He was not fleeing or seeking to escape, and the officers were present to apprehend him in case he tried to leave the hotel. Nor was the evidence or contraband threatened with removal or destruction. This is not a case where there were "compelling reasons to justify the absence of a search warrant", McDonald v. United States, supra, or where the search and seizure were dictated by "the inherent necessities of the situation at the time of the arrest", Trupiano v. United States, supra.

The court concludes that the search conducted incident to defendant Davidson's arrest was unlawful and that the evidence seized thereby should be suppressed.

For the reasons stated herein, the defendants' motion to suppress the evidence and quash the indictment is granted as to defendant Davidson but denied as to defendant Horton. An order will be entered in accordance with this opinion.